The Honorable the Judges of the United States Court of Appeals for the Fourth Circuit Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh, and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Please be seated. We're happy to hear argument in our first case, Lennear v. Wilson. May it please the Court, I'm Rebecca Gant and I represent the Apollo Nicholas Lennear. Every Court of Appeals to have considered the question agrees the Court that prisoners have a due process right to present disciplinary, to present video surveillance evidence in their defense in prison disciplinary proceedings. The government does not dispute this point in their brief in this Court, and the Bureau of Prisons also recognizes the importance of this objective, reliable evidence. It tells prison officials to review it, whether or not an inmate requests them to do so. Mr. Lennear is in his late 50s and is on medication that requires frequent restroom use. He told the hearing officer that on the day of the incident, during an extended inmate count, he requested to use the bathroom repeatedly and was denied permission, while others were allowed to go. The prison official, Case Manager Lemos, said in her written incident report that he hadn't cited a riot. Mr. Lennear has consistently denied this and has said that video surveillance would conclusively show that he did no such thing. The Supreme Court said in Wolf v. McDonald that the right to present evidence is basic to a fair hearing, yet Mr. Lennear was denied the right to present the single piece of evidence that would have helped him the most. He requested video surveillance early and often, but prison officials denied his request. I agree that the prison officials may, as a penological justification, which the Supreme Court recognized in Wolf v. McDonald, set requirements for when inmates have to request evidence and in what form they must do so. So that would have to be determined by the content of the restrictions that the prison has imposed. In this case, the Bureau of Prisons has not laid out any place or requirement for the inmates to make a request, other than their regulations say that the DHO will consider all the evidence presented to it. The first request for the sheet in terms of the appeal or whatever he did here, as I understand it, he didn't fill that out or did he? The regional appeal form, Your Honor? Yes. Yes, the regional appeal form is in his own handwriting. Your Honor may be referring to the DHO report, which is typed up, but the regional appeal is in his own handwriting. Every form until that point was filled out by a prison official, with the one exception of the two forms that advise him of his rights for the DHO hearing that leave the space for him to request witnesses, check whether he wants witnesses, and he signed that form. That's a form that's there, and as I understand, part of your complaint or your problem is that you say that form doesn't tell you on it that he should request this video or some other information. That's right, Your Honor. There is nothing on the forms or in the Bureau of Prison Regulations that tells him that he needs to request evidence at any point other than at the hearing that the hearing officer will consider the evidence before it. The forms and the regulations are very clear about requests for witnesses. They have a number of regulations about what kind of witnesses can testify and explicitly require an inmate to denote whether or not he will request witnesses before the DHO hearing, but the form, I believe it's J47, has spaces listed where an inmate can request witnesses, what they will testify to. The inmate has to sign that form, but the BOP has nothing, has no equivalent for documentary evidence. So Mr. Lanier documented his request for witnesses, I'm sorry, for evidence at the very first point he could do so. And his submission is that he requested it earlier, orally. Yes, Your Honor. He has stated in his regional appeal and in his affidavit and other places that he requested it at the investigation stage and was denied, at the UDC stage, which is the preliminary hearing, and was denied, and then at the DHO hearing itself and was denied. Can I go back to your answer to Judge Winn, and I took from what you were saying to us, is that you do not maintain that he has a constitutional right to examine this evidence, or do you maintain that? I do contend that, Your Honor, that if he requests the evidence at any point in the disciplinary process that he does, absent the valid penological justification asserted by the Supreme Court. But it is what you, I think you called it, or your colleagues called it, a qualified constitutional right. Yes, Your Honor. The Supreme Court in Wolf recognized that based on prison needs, an inmate's request for witnesses or documentary evidence could be overcome by a valid penological justification asserted by the prison. But there haven't been any asserted at any point in the proceedings here. Mr. Lanier did reference in his, at several points, that the investigator and the UDC told him that they only reviewed video in the case of the stabbing. That would clearly be an arbitrary limitation. This court in Dalton held unconstitutional Virginia Department of Corrections policy that excluded an entire category of witnesses from testifying. But if, maybe there's not enough here, but if the prison said, listen, it's time intensive to pull and review video. And the prison systems have a large video system. It's quite difficult to pull them off. It takes time, and that time takes away from other things. This is the idea in Wolf. They can reasonably limit the length of a hearing by limiting the number of witnesses. But if the prison system said, listen, we just can't, given resources that need to be spent on valid penological reasons, we can't invest the time to look at every video in every case. And so we've decided, based on our safety and security needs, that we only will review them where there's a stabbing or some sort of physical injury. So in the most serious cases, we'll look at them. But in other cases, we will not. Why wouldn't that satisfy Wolf's balancing? It might not be the balance that I would choose. We could all disagree with it. But Wolf tells us we owe extreme deference to the prison system in evaluating whether that's a reasonable penological justification. Yes, Your Honor. I'd first note that the Bureau of Prisons, in fact, has said the opposite, that investigators should review video surveillance in every case with no limitations as to how serious the case is. Which indicates that, at least in this prison, it isn't an undue burden to do that. Yes, Your Honor. And plainly, my question prefaced with, this is the hypothetical, right? So, like, I'm just saying, if a prison did that. I start by saying, I'm not sure this record says that. But I'm just giving you the story of, if a prison did that, wouldn't that be at least a plausible penological purpose? I think that would be plausible, Your Honor. In Brown v. Braxton, the Fourth Circuit held, contrasted the Dalton case that I discussed before and said that, upheld a regulation in a max security facility that did not allow live testimony. It said that, given the extreme tensions in those sort of facilities, it would not have live witnesses testify against each other. So, I think, Your Honor, as long as there was a reasonable nexus between the legitimate interest asserted and the regulation itself, yes, that would be plausible. Can I go back to sort of a threshold question? You made the comment earlier on that the video would have shown that he didn't incite. And I'm not trying to quote you, but something to the effect that the video would have shown it. So, I've never been able to figure out how the video would have shown that. I mean, your client, you know, in his description, in your brief, he's never contested that he left the area and approached her and was walking away. His allegation is, I didn't say it, right? Somebody said something that made her mad. She wrongly assumed it was me. And, you know, that's his description of what happens. That's been quite consistent throughout. And I can't figure out, as a threshold matter, even if there is a qualified right and we can talk about the justifications, it seems like you've got to explain why it's relevant. And we can talk about what that standard is, but why it's relevant and why it would matter in order to require them to do that. You've got to explain why, in a witness context, why this witness would give us information that matters. Why this video would give us anything that matters. I've never been able to see. Yes, Your Honor, I'd start with the charge itself that he was charged with, which was inciting a group demonstration. There are other charges for disobeying the orders of an officer or insolence to an officer, but those are of substantially less severity and would not authorize the penalty he received here. So that's the key, that what is on the video would have to show that he did not incite a riot. And there are several ways in which the video could do that. Case Manager Lemos alleged that he screamed to other witnesses, that he acted aggressively, that other witnesses were demonstrating in return. The video, courts have also noted that video can be key in corroborating inmates' accounts who start with a credibility problem. So he said very specifically that he raised his hand to go to the bathroom, that other inmates were allowed to go to the bathroom and that he was not. So video could also show, in addition to showing that he wasn't screaming, gesturing to incite others to demonstrate. Another charge here is a group demonstration. That's a very serious charge. Yelling and other stuff is secondary charges in the sense of a group demonstration. Because I understand it's like, what is it, second to only like killing someone in prison? Yes, Your Honor, it's of the second most severity level. It's high severity. Other accounts in that category include sexual assault, stalking, possessing the clothes of a prison guard. Actually, you've got just a short period of time. What is it you want here? Your client has got 27 days of good time taken away, and you want us to send it back so that he can present this video? Have you already looked at the video? Your Honor, the government has never given us the video, so no, we have not. So you want to go back and have the video and then go back through the proceeding with the benefit of the video evidence? Well, Your Honor, I've asked for, in the alternative, an evidentiary hearing as to timeliness. As to harmlessness, I don't think it's necessary to go back to the district court and review the video. The government could have presented it in district court to show that... So what do you want us to do? You want us to just give him back his 27 days? Your Honor, the relief I requested was to direct the district court to issue a writ of habeas and order the Bureau of Prisons to either restore his good conduct time or to hold a new disciplinary hearing in which the video surveillance efforts... Why would we not do the latter in every case? I just don't understand why we would, based upon this record, reverse it and say give him back his time. So if the end result is to simply go show the video and have the hearing, you could end up with the same result. Yes, Your Honor. I sometimes wonder why these cases get up to the full circle. I mean, it just seems to me it's just a simple thing. Show the video, unless there's something wrong with it. But maybe I'm oversimplifying that. Yes, Your Honor, it certainly would have solved a lot of the questions we're discussing now, as would having forms similar to the witness forms that the BOB has that gives the witness a clear opportunity to document his request for evidence that would have... given the form that the inmate has to sign that advises him of his rights with respect to witnesses and asks him to identify those. Bureau of Prisons could do the same thing for evidence, but it has not. So that's the reason why we have these questions that we're discussing. In fairness, we appointed you counsel, and we put it on the oral argument calendar, so that's how I got here. Yes, Your Honor. You were generous in not mentioning that. Well, I understand how you got here. I was understanding why you got here. Well, I think it raises serious questions, Your Honor. The government doesn't dispute the due process right at issue. There was no penological justification raised. And can I just ask you one other factual question? I had read what he said, what your client said, to request that the prison officials look at the video. He's not requesting that it be shown to him even. Your Honor, he has stated in his, I believe it was his affidavit and his regional appeal that he, for the UDC and the investigator, he asked them to review it and for it to be made part of the record. So I think he did make both. I guess I took that as a basis for review to the next level. In other words, it was part of the record. They reviewed it. Yes, Your Honor. If it were presented at the DHO hearing absent a penological justification, he would have the right to be in the room and view the evidence. So let me ask this question. I mean, if this was a criminal case, again, hypothetical. I understand it's not a criminal case. But in a criminal case, and this was the same scenario we've got, we'd analyze under Brady this question of whether the video was withheld. But in order to get a new trial in that context, you'd have to show the video is material, which is often a really hard thing for a criminal defendant to do because they don't have the video. And we've said in a variety of cases, speculation about what might be on the video isn't enough to get over that standard of materiality to show that a new trial is warranted. Understanding that maybe the Brady standard itself is too high of a bar here, but even under this more qualified right that you've described, how do you get over this idea of showing some kind of materiality, given that, to my knowledge, nobody's ever seen the video? May I finish? Yes. Well, I would say, Your Honor, I'm not sure whether or not anyone has seen the video. The government has made some assertions implying they have knowledge as to its content on appeal. As to Brady, that's an alternative argument to the Wolf Claim. I think the Wolf Claim might be more analogous to an evidentiary error at trial. Of course, in the normal context. But they're both due process. And I'm sorry, I don't mean to run over, if I may, Judge Mott. But it's not an evidentiary question. Both Brady and Wolf are due process cases, right? And so both of them involve this sort of idea that you're required to have process for things to take place. And we can talk about the different standards. But it seems like in both contexts, Brady and or Wolf, you've got to show some materiality in order to get a new hearing. I understand Judge Wynn's point is that if you're entitled to relief, the relief is a new hearing, where you get to show the video, assuming it's still there three years later. But in that context, which is more developed, we've required the defendant to put forward some evidence of materiality before we grant a new trial. Why wouldn't we, to the extent we found this qualified due process right to discovery or production, maybe there's a distinction there, why wouldn't we also require some showing of materiality? And it's sort of a different version maybe of the harmless error discussion we talked about a minute ago. I would say all of these cases arise from the posture where an inmate has requested access to the evidence and been denied it. So there's never going to be an instance where the inmate has seen the video. That's true in the Brady context, and I'll stop. But that's also true in the Brady context, right? I mean, that's one of the challenges in the Brady context. Defendants don't know what they don't know, but it's still there. But it's hard to make a Brady claim until they do know. They ultimately do know what they didn't know, and so they can make the claim. But you're saying that... Yes, Your Honor, I'm thinking the prison evidence is uniquely not available to the defendant in any... available to the prisoner in any respect. It's all under the control of the prison officials, which changes the landscape a little bit. Could be available in a 1983 case. I'm sorry, I've gone way, way long. Thank you very much. Good morning, Your Honors. May it please the Court. This case really falls into two broad categories of questions. It's whether the inmate has a right to the video surveillance for prison disciplinary proceedings, and then the second part, which is really different, is whether on this record the district court's decision to deny the habeas petition should be affirmed. We think the answer in both questions, to both questions, is yes. Visit with me the question Judge Richardson posed. The Fourth Circuit has never extended the Brady exception to a prison hearing type situation. But in this instance, does the Wolf standard insofar as the threshold for admission of these type of evidences, is that somewhat lower than the materiality standard under Brady? I'm sorry, Your Honor, the question is whether Brady... What is the effect of Brady on this case? There should be no effect, Your Honor, because Brady is... well, aside from the question of whether this was raised in the district court, it doesn't apply in this case because Brady is a trial right. This is not a trial, this is a post-conviction right. And Wolf and all the cases that have followed Wolf have repeatedly discussed the more narrow framework that is applicable under Wolf for prison disciplinary proceedings. We know, for example, from Wolf that there is no right to confront, there is no right to cross-examine, which are clearly rights that an individual would have at trial. There is a later case, there is the ability of prison officials to use an anonymous informant in support of a disciplinary proceeding. That, too, could never pass muster in a trial. So the cases, but for a Seventh Circuit case, and there is actually some conflict in the Seventh Circuit on that issue, but for the Seventh Circuit, other courts, including an unpublished opinion of this court, have not extended Brady to the prison disciplinary context. The prisoner here was charged with inciting group demonstration. Does the video show that incident? And if so, is that a material piece of evidence? I'd actually, Your Honor, take issue with that recitation of the charge. Judge Richardson, you brought this up as well. The actual charge, the actual fraction that the inmate was charged with was what they call a Code 299. And a Code 299 is conduct which disrupts or interferes with the security or orderly running of the institution. Most like some other high severity offense. The Code specifically says this charge is used only when another charge of high severity is not accurate. In other words, even though this was charged as a Code 299, interfering, disrupting or interfering with the security or orderly running of the institution, most like engaging in or encouraging, not inciting. And I'm not sure where that gets you, though, because the crux of what we're saying to you is that the most serious charge was supposedly having something to do with this incentive unrest among the other prisoners. Without that charge, he wouldn't have gotten the loss of good time credits, right? So without the prison officials saying that he, at the end, as I remember their term, they say at the end he was yelling at people to also yell and why are the people treating us this way and there's respect demands respect, blah, blah, blah. Correct. So I'm not sure where your answer, how does your answer help us? That is the serious charge, whatever you want to call it, incentive riot or inciting people to riot or not, but that's what it was and that's what gave him the loss of the good time credits, right? There's no question it is a serious charge. There's no question it's in the high severity charge, but where it gets to is the question Judge Richardson was asking about where's the materiality of what the video may show. Is it relevant? Does the video show evidence that would be relevant to that charge? I have not seen the video, Your Honor. I do not believe it's not in the record, but I do not believe a video exists to show this, but our position Well, if it doesn't exist, you can tell them it doesn't exist. I understand. I mean, why are we all talking about it? It just seems to me this is so easy.  I agree, Your Honor. Well, I agree that at a certain point he asked for the video. So you have not seen the video? I have not seen the video. Who has seen it? I'm not aware that a video exists of this incident. How do we know whether it's material or not if nobody has seen it? That's kind of interesting to me. I mean, I would have thought of all people you would have seen that video and would be able to represent consistent with your statements about Judge Richardson's question, oh, it's nothing here. It's not material to what's going on. But how can you say that? Or sometime along the way one of your clients would have seen it and said there's nothing on it and filed an affidavit saying that. The other guy, the challenger, Mr. Lanier, is the only person that's ever filed an affidavit in this case. I understand that, Your Honor. I understand our record below does not include any reference to viewing or seeing the videotape. Could you have seen it? Can you see it? I am advised now, it is not part of the record, I am advised now that there never was a video. Well, what are we doing here? There's no video. That was the record before we didn't address the question of the video. But don't you think that would have been a good time to say that before you ever got here? In retrospect, certainly, Judge Motz, it would be. I mean, there was a lot of opportunity. You went through all of these agency reviews. Then you go to the district court. Then you come here. All along, it seems to me, it was incumbent upon you and your clients, if there is no video, to file an affidavit. Except from the President's perspective, Your Honor, is that there was no request at the initial investigation. I understand that that is an issue of fact. There's a disputed issue of fact about that. And he's the only one that filed an affidavit about it. Your people don't say it under oath. There's nothing to back up his assertion that he made that. The record itself, which he does not dispute. Every time he had an opportunity to ask for it, on your form, he asked for it. I mean, do you expect him to file addenda to the form? Actually, at the administrative phase, Your Honor, the first time he asked for it was after the DHO hearing to the appeal to the regional office. That's not what he said. I agree. That is maybe what you said, but not under oath. I agree that's what he said. But the records before the BOP officials are the first time he requests are at that regional office appeal. At that point, it is a reasonable response to say to the inmate, you did not request this earlier. I hear you, and I'm not doubting your good faith. But look at this as the record before us. He's made affidavit that he asked for it every time. And you say, your people say, but there's no affidavit, there's nobody testifying, that no, you didn't. I agree, Your Honor. So when those kinds of cases come to us, that's not summary judgment. That's not 12B6. Those are issues of material fact. But it could be harmless area. I understand you to say there is no video. That is my understanding. Again, Your Honor. So if there's no video, is that dispositive? If there was no video ever. Yes. To report, to show anything about that. Is that dispositive? It would be dispositive. So why don't you just say, go ahead and remand it to the hearing on it for determination whether there's a video. Because there's no video, and that will be the end of this. Because the situation as it is now, there's still a harmless error analysis. And we believe that this is a harmless error situation based on the nature of the charge and based on what he says. And this goes back to what Judge Richardson says. But if nobody's ever seen the video, how could we determine that? Your Honor, I would suggest that almost turns it around to suggest that unless you do not commit an error, there can never be harmless error. Well, the answer to that question is, or let me ask it a different way. Under habeas, who has the burden to establish that relief is appropriate? The inmate would have the burden to establish. So if nobody's seen the video, and so you can't decide one way or the other. I'm with you. I've got no idea. But in that scenario, the answer is that the inmate has failed to carry the burden, right? Correct. No, not if you are required to make the videos and didn't make them and denied him the right along the way to see them and then subsequently destroyed them. That's an impossible burden. That can't be the law. Now, that may not be so. There may have never been a video. Then he's out of luck. But from a harmless perspective, the nature of his charge, the nature of the infraction, and what he says is what the video would show does not carry his burden. He says, for example, well, the video would show I just wanted to go to the bathroom. I don't know how it would show that to start. Well, if it was sound, you could hear him saying that. Well, he has put forth no evidence of where the cameras are. He could put forth evidence, Your Honor, of where the cameras are in the unit because he is in that unit. He could put forth evidence that there's a camera in the corner. But the evidence that he, for example, wanted to go to the bathroom would not change the nature of the charge because when he disobeyed the first order, which he admits he did in the context of 170 inmates in that enclosed area, that's in the DHO report. That's what he acknowledges. 170 inmates who are already grumbling, who are already griping at the guards because the inmates fail to appreciate the difficulty in making the count. Can I add to that? Is the basis for the encouraging of group demonstration you say is a different type of charge? No, Your Honor. What happens is when he disobeys order number one and leaves his queue and he begins to approach case manager Lemos, order number two, he is told again, go back to your queue. He disregards that one. It takes a third order to go back, but not before he confronts the case manager in front of 170 grumbling inmates who are already voicing displeasure. Is that charge the basis for the 27, not the first two? I'm sorry, the basis for the 27? For getting rid of the 27. I'm sorry, the good conduct, yes. The basis of the charge is the Code 290, most like the engaging or encouraging of groups. Does that charge require success? I mean, is there anything about that charge? So if I, you know, encouraging or inciting or whatever words, you know, don't imply success. So if I try to, you know, raise the troops to storm the rampart, but they don't follow me, that's encouraging just like if I am able to get them to follow me, right? Not being successful in courage is just the same if he's trying to do it. And that's my point that I was going to judge when is you have these 170 inmates. They're already griping at the guards. And he goes out to the guard after being told twice, stay in your cube, and he confronts her. I'm trying to, in a harmless thing, I'm just not really understanding this video if it exists, which I'm just perplexed by that whole thing. It just makes no sense to me if there's no video while we're here. But let's assume there's a video because here's an affidavit saying he requested it. We all agree to that. You didn't refute it or do anything on that. So there's a video of something showing what's going on. And the charge is, whatever you want to call it, you see you've got 170 people. Wouldn't a video show this? I mean, why wouldn't it show what was going on? If a video was positioned to show that, it would show what is going on in the open area. Because we don't know what it would show, but we do know, at least if we're looking at it in terms of the request of a video, it's going to show what was going on, which became the basis for the charge. But prison officials also have, for penological interests and concerns, the ability to deny the request for evidence or witnesses when it is irrelevant. Penological justification extends to evidence that the prison says is irrelevant? It does. Because the scope of what constitutes the interests and concerns include avoiding disruption to the prison operations, interference with it, ensuring prompt punishment. That's different than just saying it's irrelevant. Keeping hearings reasonable, avoiding manipulation. The problem with that argument, y'all didn't actually do that, right? Had you said, even in the district court, right? And the Supreme Court said, you can do it after the fact. But even in the district court, you didn't say, we denied the request because it would have interfered with safety and security. There's some reference to that at JA-50, but not very clear. But in the district court, all you had to do was say, this would have taken away guards from doing other work. This would have extended the hearing time. This would have caused a disruption. This is a security problem because it would have showed the angles. Had you said any of those things, and maybe even that it's irrelevant, had you given those reasons, it would be really easy, right? But the Supreme Court said, you've got to give the reason, right? We can't speculate as to what the reason the prison had for denying it other than timeliness and just accept, for our argument purposes, that there's a dispute of fact about that. Well, in the DHO report, Your Honor, you're right as to the other things. Those aren't described specifically. But in the DHO report, it specifically says, we are not granting this because it's an untimely request. I understand that, but that's a factual question. Put that issue aside. What you didn't do is give any other basis. I mean, had you said, it's untimely, but even so, we wouldn't have given it because it's against our penological interest. Maybe even that general statement might have gotten you there, right? I mean, your colleague agrees that if it had taken an hour away from the guard's time supervising something else, that probably would be sufficient penological reason. But there are none of those in the record. Your Honor, but the cases that have relied on a failure to timely request a particular piece of evidence or a witness all outline the reasons why. When the prison says, you didn't request this on time, I don't believe that the due process clause would require them to go further and outline reasons that are from the cases. When they say it's not timely, and we have a number of cases that we've cited that say timeliness or the failure of a timely request precludes a due process violation, we think that would be sufficient. Well, and I suspect that we all agree that if the facts turn out to be that it was an untimely request. But the facts are disputed. Right. No, no. But if that's true, you may be right. But the problem is we got an affidavit and we got some evidence to the contrary. And that would require a factual resolution. We are still left with the question then of what has the inmate shown, what has Mr. Lanier shown, established that a video, what does he say it would really show? If he says it would show that I wanted to go to the bathroom, our response to that is that doesn't matter. It doesn't matter if his intent was to go to the prison canteen for something. It won't show anything because it doesn't exist is what you're telling me. It doesn't exist. That's correct. I still don't get it. I don't understand what we're arguing about. I don't understand why don't you just send it back and let the court just decide, let them decide is there a video. And you already know there's not one. And, okay, no video in the thing. But it shouldn't go back and it didn't report resources devoted to it. It shouldn't have gotten here the first instance if you just didn't correct it. Well, I talk about resources. This is really inexplicable to me, really. And to go to your point that you're just making, what it might show, what your person said in the DHO report is that the defendant here, Mr. Lanier, said after you return to your cubicle you started yelling to the other inmates in the unit. This is bullshit. They all treat us bad. Respect deserves respect. Look how they're treating us. We shouldn't have to put up with this. These statements encouraged inmate Wilson to begin screaming at Mr. Lemos, stating, why do you guys always have to intimidate us? Why are you always furnishing, I don't know what, furnishing us, funding us. The incident described a case manager, in other words, your client put the whole melee, I don't know what you want to call it, you resist saying that it's inciting them to riot. I don't know what you think it is. It's like inciting to riot. He puts it on this testimony. Maybe if we did have a film it would have shown something about that. But if that were the case, Judge Motz, it's still the inmate's burden to establish what is it going to show. Even if you take just what he says. But he's saying that. He says it's going to show that. Even if you take just what he admits, which is disobeying an order two times before he returns, confronting the prison official in the open space with 170 inmates around him who are already grumbling about the guards and not just saying, may I go to the bathroom, but saying you are doing this to me because of my issue with another guard. He is directly confronting that official. He is directly undermining that official's authority. And even Mr. Lanier acknowledges that his offense would have supported disobeying an order of an official and insolence to an official. And when you put it in that context of 170 inmates in that environment, that is the type of prison background and context that the courts repeatedly say we should not ignore that this is what prison life is about and this is what's happening. All right. Thank you very much. Thank you very much, Your Honor. I appreciate you hearing from us. Your Honors, regarding whether the video ever existed, I think there is a very important distinction to be drawn as to whether it was never created in the first instance or whether it was created but just never preserved. The government has had multiple opportunities to deny its existence. At the very latest on the regional appeal, I would note that the response was not there is no video created for this location. The regional appeal did not ever deny the existence of a video. It was never denied in habeas and it was never denied in the briefing in this court. I would also point to the – Although that's because their position, I'm not advocating, but their position was we don't have to go look. They wouldn't naturally have denied its existence because they say, listen, if you didn't ask for it, whatever it is, it's not costless to go get the video, identify the time, place, location, pull the video out of the system. I think that part is easy. That might not be very expensive time, effort-wise. It's not costless. If their position was we don't even have to go look because it wasn't a timely request, then they wouldn't have denied it. I'm just not sure how much that gets us. You can often make alternative arguments, and this would seem to be an easy alternative argument. Yes, Your Honor. And I would also refer to the Bureau of Prison Policy Statement, which says it would also be prudent for the investigator to review and preserve the video or audio surveillance, even if the inmate does not make a specific request, as such evidence is relevant to the incident. It may well be prudent, but the question is whether it's required. I don't think anybody disagrees that it would be prudent, but that's not an enforceable policy statement for us, and prudence is not a requirement. Yes, Your Honor. I think in that way it's linked to the timeliness determination. If it was determined that he did make timely requests before any video that existed was destroyed, I think the only remedy for that violation would be to restore his good conduct time. So I think in that way the existence of the video is linked to the timeliness requirement. Once he requested it, I would say that the Bureau of Prisons was under a constitutional obligation to preserve it, and if it didn't then the only remedy for the violation of his was the restoration of the good conduct time. So you would suggest that we send this back for determination on the question of timeliness. Is that right? If Your Honor. If the determination is that he did timely make this request, if the determination is that he didn't timely make the request, the case is out. If he did timely make the request, then they should review the video. If they do not have the video, then they should restore his good time credits. Is that what your submission is? Your Honor, I do think it depends on timeliness. The only difference with what Your Honor just said is that I think that evidence is clear that he did make a timely request. The government had an opportunity to send an affidavit in the district court disputing his affidavit as to its request and it stood not. I don't know how many bites of the apple it should get on this point, but I think that the evidence is clear that he did make a timely request and then it would turn on whether. I guess that the government had made an affidavit saying that it was not timely and he had done nothing. We wouldn't be sending it back even if he said it was timely. In other words, we would be penalizing him in the way we would penalize the government if they had submitted an affidavit. Although the government submitted evidence, they just didn't submit a date. There's evidence, circumstantial evidence, from which one could conclude that he didn't make the request. There's an affidavit to the contrary. That's why there's a factual dispute is that that circumstantial evidence and his affidavit evidence are in conflict. And the district court sort of resolved it in favor of the circumstantial evidence over the direct evidence, maybe incorrectly. But that's not to say that there was no evidence, right? Well, the district court never considered his affidavit at all or never mentioned it. In terms of the evidence from the disciplinary proceedings, there is no statement by an official in the disciplinary proceedings that Lanier did not make a request for evidence. The closest any mention of evidence is at the DHL level, where the DHL said it did not consider any evidence, whether presented by either side. And then the DHL also said that Lanier did not have any evidence to present. But it also said, very nearby to that, that he said he did not request any witnesses. So I think that distinction is telling, and there is simply nothing in the record contradicting it. And I'm not disagreeing that you've got an explanation for the circumstantial evidence. I'm just saying that a reasonable fact finder could look at that evidence differently. Understood, Your Honor. Thank you. Thank you very much. Ms. Gannett, I understand that you're court-appointed, and we very much appreciate your efforts. You did a fine job for your client, and we couldn't do our work without lawyers like you. Thank you very much. Thank you, Your Honor. I appreciate the opportunity. We will come down and say hello to the lawyers and then go directly to the next case.
judges: Diana Gribbon Motz, James A. Wynn Jr., Julius N. Richardson